UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Mark E. Schaefer


        v.                          Civil No. 12-cv-159-JD
                                    Opinion No. 2012 DNH 185

IndyMac Mortgage Services et al.


O R D E R

        Mark Schaefer brought suit in state court against IndyMac
Mortgage Services; OneWest Bank, FSB; Federal National Mortgage
Association; and Harmon Law Offices, P.C., alleging various state
law torts and breach of the implied covenant of good faith and
fair dealing arising from the defendants' involvement in the
foreclosure of his home.  The defendants removed the case to this
court and move to dismiss the case.  Schaefer objects.


Background

        On November 26, 2007, Mark Schaefer entered into a
refinancing loan with IndyMac Bank, FSB ("IndyMac Bank") for
$211,296, which was secured by a mortgage on Schaefer's home at
19 High View Circle in Gilford, New Hampshire.  OneWest Bank, FSB

("OneWest") was at all relevant times the loan servicer of the mortgage.[1]

In 2009, Schaefer failed to make timely payments on his mortgage, resulting in default.  Schaefer applied for and entered into a mortgage modification agreement with OneWest that same year.

Schaefer made his monthly payments consistent with the requirements of his loan modification until late 2011, when he again defaulted.  In January 2012, Schaefer obtained a loan modification application from OneWest's website.  On January 19, 2012, OneWest, which had been assigned the mortgage from IndyMac Bank and also continued to act as the loan servicer, sent Schaefer an invoice that included the total arrearage owed on his loan.

On January 30, 2012, Harmon Law Offices, P.C. ("Harmon"), sent Schaefer a letter informing him that it had been retained by OneWest to foreclose on Schaefer's home.  The letter provided Schaefer with the total amount left on the mortgage and gave instructions on how to request a reinstatement quote.  Schaefer followed those instructions and twice requested a reinstatement

--------

[1] The actual loan servicer of the mortgage was IndyMac Mortgage Services, a division of OneWest.  To avoid confusion with IndyMac Bank, the court will refer to the loan servicer of the mortgage as OneWest.

quote through Harmon's website, on February 6 and February 16,
2012.  Both times, Schaefer received the following automated
message: "Thank you.  Your request has been received.  We will
forward the reinstatement or payoff information to you when it is
obtained from your lender or servicer or the lender or servicer
will send this information to you directly."  Schaefer did not
receive a reinstatement quote from either Harmon or OneWest in
response to his request.

On February 14, 2012, Schaefer received a foreclosure notice
from Harmon informing him that a foreclosure sale was scheduled
for March 12, 2012.[2]  On February 16, Schaefer faxed to OneWest a
loan modification packet, which included 28 pages of information
related to his application.  Three days later, Schaefer called
OneWest, and was told that OneWest did not receive a significant
portion of his application.  Schaefer promptly re-sent 19 pages
of his application.

In his application, Schaefer disclosed that another
individual, Kathryn Russell, was going to contribute to his
mortgage payment.  In a letter dated February 23, 2012, and by a
phone call, OneWest requested that Schaefer provide additional

---

[2]At the time Schaefer received a foreclosure notice, the
mortgage had been assigned from OneWest to Federal National
Mortgage Association ("Fannie Mae").  OneWest continued to act as
the loan servicer.

financial information for Russell.  In the letter, Schaefer was directed to fax all materials related to Russell to 1-866-235-2366.

In a second letter from OneWest also dated February 23, 2012, Schaefer was advised that Elizabeth Milian and her team of associates were assigned to his loan, and that Milian would be Schaefer's "customer contact manager" (the "Milian Letter").  The Milian Letter informed Schaefer that Milian and her team were available "to help review your current situation and evaluate possible workout options for your loan."  The letter further advised Schaefer that Milian and her team would be his point of contact throughout the process, and that they would "be available to answer any questions you may have while your loan is being reviewed."  The letter contained contact information, including a fax number, which was different from the fax number provided in the first letter.

On February 28, 2012, Schaefer faxed Russell's financial information to OneWest.  Schaefer, however, did not fax it to the number provided in the first letter.  Instead, he faxed it to the number provided in the Milian Letter.

Several days later, OneWest called Schaefer to ask about Russell's financial information.  Schaefer informed the OneWest representative that he had faxed the information to the number

4

provided in the Milian Letter.  The representative told Schaefer
that the information should have been faxed to the number in the
first letter, and instructed him to fax the materials to that
number.  Schaefer faxed Russell's information to that number on
March 9, 2012, three days before the scheduled foreclosure.

OneWest and Schaefer had no further contact prior to the
foreclosure.  On March 12, 2012, Fannie Mae conducted a
foreclosure auction of Schaefer's home and was the high bidder
and purchaser of the property.  This action followed.

### Standard of Review

When considering a motion to dismiss under Federal Rule of
Civil Procedure 12(b)(6), the court must determine whether the
facts alleged, when taken as true and in the light most favorable
to the plaintiff, state a claim on which relief can be granted.
Rederford v. U.S. Airways, Inc., 589 F.3d 30, 35 (1st Cir. 2009).
Under the notice pleading standard of Federal Rule of Civil
Procedure 8(a)(2), a plaintiff need provide only a short and
plain statement that provides enough facts "'to raise a right to
relief above the speculative level . . . .'"  Ocasio-Hernandez v.
Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Bell Atl.
Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  The court must
separate the factual allegations from any legal conclusions and

decide whether the factual allegations, taken as true, state a plausible claim for relief.  <u>Ocasio-Hernandez</u>, 640 F.3d at 10-11 (applying <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678-79 (2009)).

<u>Discussion</u>

Schaefer brings claims for negligence, negligent misrepresentation, intentional misrepresentation, and breach of the contractual duty of good faith and fair dealing.[3]  The defendants move to dismiss all of Schaefer's claims.

A.   <u>Tort Claims</u>

Schaefer alleges that the defendants were negligent by breaching "a duty of care and competence in the handling of his [loan] modification application."  He further alleges that the information provided in the Milian Letter constituted either a negligent misrepresentation or an intentional misrepresentation. The defendants argue that Schaefer's negligence, negligent misrepresentation, and intentional misrepresentation claims are barred by the economic loss doctrine.  They further argue that

--------------------------------------------------------------

[3]Schaefer also brings claims for temporary injunctive relief, preliminary injunctive relief, and permanent injunctive relief.  In his opposition to the defendants' motions to dismiss, Schaefer explained that his claims for injunctive relief may be considered a prayer for relief rather than separate causes of action.

they did not owe Schaefer the duties of care he alleges and that, even if they did, they did not breach those duties.  They also contend that the Milian Letter does not contain a misrepresentation.

"The economic loss doctrine is a 'judicially-created remedies principle that operates generally to preclude contracting parties from pursuing tort recovery for purely economic or commercial losses associated with the contract relationship.'"  Wyle v. Lees, 162 N.H. 406, 410 (2011) (quoting Plourde Sand & Gravel v. JGI Eastern, 154 N.H. 791, 794 (2007)). "Thus, where a plaintiff may recover economic loss under a contract, generally a cause of action in tort for purely economic loss will not lie."  Plourde, 154 N.H. at 794.  "[T]he rule precludes a harmed contracting party from recovering in tort unless he is owed an independent duty of care outside the terms of the contract."  Wyle, 162 N.H. at 410.  Where the existence of such an additional duty is claimed, "[t]he burden is on the borrower seeking to impose liability, to prove the lender's voluntary assumption of activities beyond those traditionally associated with the normal role of a money lender."  Seymour v. N.H. Sav. Bank, 131 N.H. 753, 759 (1989) (internal quotation marks and citations omitted).

Schaefer concedes that he has a contractual relationship with OneWest,[4] but argues that the economic loss doctrine does not bar his tort claims because he is not "primarily seeking economic damages."  He contends that he is seeking an injunction against eviction, an opportunity to reinstate his loan, and to have his loan modification application fully and fairly considered, not damages for economic loss.

Schaefer alleges that because of the defendants' negligence, negligent misrepresentation, and intentional misrepresentation, he "has been damaged . . . by the loss of his home of 28 years and any and all equity therein."  The loss he describes is economic - the loss of his property and the equity he held in the property.  Therefore, Schaefer seeks to recover for economic loss, as opposed to "personal injury and property damage." Plourde, 154 N.H. at 795; see also Deutsche Bank Nat. Trust Co. v. Fadili, 2011 WL 4703707, at *8-*9 (D.N.H. Oct. 4, 2011) (negligence claim based on failure to obtain security interest in property barred by the economic loss doctrine); Bourne v. Stewart Title Guar. Co., 2011 WL 635304, at *9-*10 (D.N.H. Feb. 16, 2011)

---

[4]Schaefer sued OneWest and Fannie Mae for their actions leading to the foreclosure of his home.  He alleges that both are liable for the actions of the other.  The defendants do not dispute that allegation and filed a joint motion to dismiss.  Therefore, for ease of reference, the court will refer to OneWest when discussing allegations against the holders of the mortgage.

(negligence claims against a title company for failing to defend against adverse claims to a house resulting in loss of the property were precluded by the economic loss doctrine).[5] Therefore, unless an exception applies, the economic loss doctrine bars Schaefer's claims for negligence, negligent misrepresentation, and intentional misrepresentation.

1.  <u>Negligence</u>

Schaefer argues that the economic loss doctrine does not bar his negligence claim because he was owed duties that were independent of the defendants' contractual obligations.  First, Schaefer contends he was owed a statutory duty under RSA 479:18, which gives mortgagors who have defaulted the right to reinstate their loans.[6]  Schaefer argues that RSA 479:18 imposes an implied duty upon lenders to provide borrowers with a reinstatement amount.  Schaefer also contends that OneWest assumed a duty to

------

[5]Schaefer offers no case law to support his argument that the applicability of the economic loss doctrine is dependent on the form of remedy the plaintiff seeks.  Regardless, Schaefer concedes that he does seek monetary damages in the event that injunctive relief is not granted.

[6]RSA 479:18 provides, "[a]ll lands conveyed in mortgage may be redeemed by the mortgagor, after the condition thereof is broken, by the payment of all demands and the performance of all things secured by the mortgage and the payment of all damages and costs sustained and incurred by reason of the nonperformance of its condition, or by a legal tender thereof, before foreclosure."

(1) provide a reinstatement amount which arose when Harmon
advertised the opportunity for reinstatement and (2) be truthful
and accurate when OneWest sent the Milian Letter.

To the extent that Schaefer bases his negligence claim on a
statutory duty under RSA 479:18, he has not alleged facts or
developed an argument sufficient to establish the existence of
that duty within the statute, see Marquay v. Eno, 139 N.H. 708,
715-16 (1995), or to show that a corresponding duty existed at
common law, see Stillwater Condo. Ass'n v. Town of Salem, 140
N.H. 505, 507 (1995) ("If no common law duty exists, the
plaintiff cannot maintain a negligence action, even though the
defendant has violated a statutory duty.").  Nor has Schaefer
alleged facts or developed an argument sufficient to establish
that OneWest assumed duties based on Harmon's letter or the
Milian Letter.[7]

_____

[7]Schaefer's negligence claim against Harmon fails for the
additional reason that Harmon, as attorney to OneWest, does not
owe "a duty of care to a non-client whose interests are adverse
to those of a client."  MacMillan v. Scheffy, 147 N.H. 362, 365
(2001) ("the existence of a duty of the attorney to another
person would interfere with the undivided loyalty which the
attorney owes his client and would detract from achieving the
most advantageous position for his client") (internal quotation
marks and citation omitted).  Harmon's letter informing Schaefer
that he could request a reinstatement quote from Harmon's website
specifically states that his "office has been retained by
[OneWest] to foreclose" on Schaefer's mortgage.  Schaefer's
attempt to characterize Harmon as an independent debt collector

The defendants also argue that even if they owed Schaefer a duty to provide a reinstatement amount, they did not breach that duty because the January 19, 2012, invoice provided the reinstatement amount.  Schaefer did not address the defendants' arguments in his oppositions to the motions.  In his complaint, however, Schaefer alleged that the invoice did not represent a reinstatement amount because it did not include charges typically included in a reinstatement amount.  Given the parties' differing interpretation of the invoice, whether it represented a reinstatement amount cannot be decided for purposes of the motions to dismiss.[8]

Accordingly, Schaefer's negligence claim is dismissed because it is barred by the economic loss doctrine and because he fails to allege the existence or breach of a duty independent of those associated with the mortgage loan.

_____

and not subject to the holding of <u>MacMillan</u> is without merit.

[8]The court notes, however, that Schaefer also alleged that he "had access to money sufficient to reinstate his loan at an amount reasonably related to the arrearage asserted in the [January 19, 2012,] invoice."  Schaefer's allegation supports the defendants' argument that the amount listed in the January 19th invoice represented a reinstatement amount.

2.   <u>Negligent Misrepresentation</u>

Schaefer's claim for negligent misrepresentation can avoid
dismissal under the economic loss doctrine, <u>see</u> <u>Plourde</u>, 154 N.H.
at 799, only when it is based on allegations of "independent,
affirmative representations unrelated to the performance of the
contract."  <u>Wyle</u>, 162 N.H. at 412 (internal quotation marks and
citation omitted).  Thus, the alleged misrepresentation must not
"concern the quality or characteristics of the subject matter of
the contract or otherwise relate to the offending party's
expected performance."  <u>Id.</u> at 411 (internal quotation marks and
citation omitted).

Schaefer's negligent misrepresentation claim is based on the
Milian Letter, which allegedly contained an incorrect fax number
and directed Schaefer to use the contact information in the
letter for all correspondence relating to his loan modification
application.  As with his claim for negligence, Schaefer fails to
allege facts suggesting OneWest's "voluntary assumption of
activities beyond those traditionally associated with the normal
role of a money lender."  <u>Seymour</u>, 131 N.H. at 759 (internal
quotation marks and citations omitted).  Representations made in
a letter concerning Schaefer's application for a loan
modification "relate entirely to [the] defendants' attempts to
collect [Schaefer's] mortgage debt . . . which fall[s] squarely

12

within the normal role of a lender."[9]  See Moore v. Mortg. Elec. Registration Sys., Inc., 848 F. Supp. 2d 107, 133 (D.N.H. 2012); see also L'Esperance v. HSBC Consumer Lending, Inc., 2012 WL 2122164, at *15-*16 (D.N.H. June 12, 2012).  Therefore, Schaefer's claim for negligent misrepresentation is barred by the economic loss doctrine.

Harmon argues in his motion to dismiss that Schaefer's complaint does not allege any misrepresentations by Harmon and therefore Schaefer has not asserted a claim for negligent misrepresentation against Harmon.  In his opposition to Harmon's motion, Schaefer contends that "the statements on [Harmon's] website acknowledging reception of his request for a reinstatement amount, which amount was never forthcoming, constitute precisely such a misrepresentation."  These

---

[9]In his opposition, Schaefer suggests that his negligent misrepresentation claim falls "within the exception to the economic loss doctrine where a negligent misrepresentation is made by a defendant who is in the business of supplying information."  Other than the bare reference to this argument, Schaefer does not discuss the apparent exception or why it applies in this case.  Mere passing allusions to an argument are insufficient to address meaningfully a disputed issue.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("Judges are not expected to be mindreaders.  Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly . . . .") (internal citations and quotation marks omitted). Therefore, the court is "free to disregard" the argument in determining the defendants' motion.  Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 260 (1st Cir. 1999).

allegations, however, were not made in the complaint, and
Schaefer may not make them for the first time in his opposition.
See, e.g., Fonte v. Bd. of Managers of Cont'l Towers Condo., 848
F.2d 24, 25 (2d Cir. 1988) ("allegations contained in legal
briefs or memoranda are . . . treated as matters outside the
pleadings for purposes of Rule 12(b)").  Regardless, Schaefer
does not explain how Harmon's website's message that Harmon
received Schaefer's request amounts to a misrepresentation.
Therefore, to the extent Schaefer asserts a claim for negligent
or intentional misrepresentation against Harmon, it is dismissed.

   3.   Intentional Misrepresentation

   Schaefer's claim for intentional misrepresentation is based
on the same allegations as those underlying his negligent
misrepresentation claim; namely, the representations in the
Milian Letter describing the "process and contact information . .
. applicable to Mr. Schaefer's modification application."  For
the reasons discussed regarding Schaefer's negligent
misrepresentation claim, Schaefer's intentional misrepresentation
claim is barred by the economic loss doctrine.

   Accordingly, because the complaint does not support the
existence of a duty owed by OneWest to Schaefer outside the terms
of their contract, or any duty owed by Harmon to Schaefer,

14

Schaefer's negligence, negligent misrepresentation, and
intentional misrepresentation claims are dismissed.


B.   Contract Claim

     Schaefer alleges that OneWest breached the implied covenant
of good faith and fair dealing in the note and mortgage.   He
argues that OneWest's actions denied him "any reasonable
opportunity to have his circumstances and modification
application reviewed by [OneWest]."[10]  He further alleges that
OneWest placed his modification application and his mortgage on a
"dual track" in which it was simultaneously being considered for
modification and foreclosure, and that such actions breached the
implied covenant of good faith and fair dealing.   OneWest
contends that it does not have a contractual obligation to modify
Schaefer's loan, and therefore, cannot have breached an implied
covenant of good faith and fair dealing in not modifying it.

     "In every agreement, there is an implied covenant that the
parties will act in good faith and fairly with one another."

---

     [10]Schaefer's complaint alleges a claim for breach of the
implied covenant of good faith and fair dealing against Harmon as
well.   In his opposition to Harmon's motion to dismiss, Schaefer
notes that he is not asserting that claim against Harmon.
Therefore, to the extent Schaefer's complaint suggests a claim
against Harmon for breach of the implied covenant of good faith
and fair dealing, that claim is dismissed.

Birch Broad. Inc. v. Capitol Broad. Corp., Inc., 161 N.H. 192,
198 (2010).  Where a plaintiff's claim is based on a defendant's
performance of a contract, as opposed to formation of a contract,
the implied covenant "prohibit[s] behavior inconsistent with the
parties' agreed-upon common purpose and justified expectations as
well as with common standards of decency, fairness and
reasonableness."  Id. (internal quotation marks and citation
omitted).

    Citing Moore, Schaefer concedes that the covenant of good
faith and fair dealing cannot be used to require a lender to
modify or restructure a loan.  See Moore, 848 F. Supp. 2d at 130.
He argues, however, that "he was entitled to a full and fair
consideration of his application for a modification," and that
the defendants failure to consider his application breached the
implied covenant of good faith and fair dealing.  Moore, however,
addressed allegations that a lender refused to modify a mortgage
"or to engage in good-faith negotiations regarding modification."
Id.  The court held that neither allegation stated a claim for
breach of the implied covenant of good faith and fair dealing.
See id.  Regardless, Schaefer does not offer any support for his
theory that the covenant cannot be used to require a lender to
modify a loan but can be used to require a lender to consider an
application to modify a loan.

16

In addition, because the defendants were not required to consider Schaefer's loan modification application, they similarly cannot be liable for preparing to foreclose on Schaefer's home while simultaneously considering his loan modification application.  Nor does Schaefer offer any support that the "dual track" process was done in bad faith.

To the extent that Schaefer alleges a breach of the implied covenant of good faith and fair dealing based on a lender's statutory duty to provide borrowers with a reinstatement amount under RSA 479:18, that claim similarly fails.  Even if Schaefer had alleged facts to support such a duty, which he has not, that duty is statutory and does not arise from the parties' contract.  Therefore, it cannot be the basis of a claim for breach of the implied covenant of good faith and fair dealing.  See, e.g., J & M Lumber & Constr. Co., Inc. v. Smyjunas, 161 N.H. 714, 724 (2011).

Accordingly, Schaefer's claim for breach of the implied covenant of good faith and fair dealing is dismissed.


<u>Conclusion</u>

For the foregoing reasons, the defendants' motions to dismiss the complaint (document nos. 12 and 14) are granted.


17

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

October 16, 2012

cc:  Thomas R. Lavallee, Esquire
     Walter L. Maroney, Esquire

18